JONATHAN HAPGOOD AND LEONARD HOWARD *v.* WILLIAM E. POLLEY, AND HIS SUBSEQUENT ATTACHING CREDITOR, THE WEST RIVER BANK.

*Promissory Note. Consideration. Contract. Principal and Surety. Assignment.*

The defendant executed to the plaintiffs jointly a promissory note payable on demand, in order that by a suit thereon they might become secured for all unmatured liabilities that they were jointly or severally under as his sureties, and for all their individual claims against him. The amount of the note was greater than the joint liabilities of the plaintiffs for the defendants, but less than the aggregate of their joint and individual liabilities for him and their individual claims against him. *Held,* that from the mere acceptance of such a note by the plaintiffs, the law implied an agreement by them to apply its avails to the debts it was designed to secure, and that such implied agreement furnished a sufficient consideration for the note.

*Held,* also, that such a transaction was equivalent to a special assignment of the defendant's property to the plaintiffs for the purpose of securing their liabilities for, and claims against, him, and, as such, was valid.

ASSUMPSIT on a promissory note for eleven hundred dollars, bearing date July 5th, 1860, signed by the defendant, and payable to the plaintiffs on demand with interest. The plaintiffs' writ was dated 19th July, 1860. At the December Term, 1860, when the action was entered in this court, the West River Bank, was, on application duly made, permitted to appear and defend

Hapgood et al. *v.* Polley et al.

this suit, as a subsequent attaching creditor of the defendant, agreeably to the provisions of the statute in such case. (Comp. Stat. p. 223, sec. 31.) At the December Term, 1861, the appearance for the defendant was withdrawn, and the defendant was defaulted. At the December Term, 1862, the cause stood for a hearing upon the assessment of damages, and the hearing was had by the court, KELLOGG, J., presiding.

On the hearing, the following facts were found, to wit:—On the 20th of April, 1860, both of the plaintiffs became sureties for the defendant, (who was a merchant then doing business in Peru,) on a promissory note for $250,00, payable to the Battenkill bank, which became due on the 20th of July, 1860, and on the 12th May, 1860, both of the plaintiffs also became sureties for the defendant on a promissory note for $300,00 payable at the Battenkill Bank, which became due on the 12th of July, 1860; and, on the 5th July, 1860, the plaintiff Hapgood became surety for the defendant on a promissory note for $200,00, payable at the Battenkill Bank, which became due on the 5th September, 1860. On the 5th July, 1860, the plaintiff Howard and one Russell Aldrich became sureties for the defendant on a promissory note for $400,00, payable to the Battenkill Bank, which became due on the 5th October, 1860, and, on the 19 h June, 1860, Howard and Aldrich became sureties for the defendant on a promissory note for $500,00, payable to the West River Bank, which became due on the 19th September, 1860. On the 18th July, 1860, the defendant was indebted to Hapgood on a promissory note, which, with interest, amounted to $51,50, and also was, on the same day, indebted to Howard on three promissory notes, and for money loaned, amounting in all, with interest, to $318,00. All of the foregoing liabilities were outstanding at the time of the making of the note for eleven hundred dollars in suit. At the several times when Hapgood became surety for the defendants as aforesaid, the defendant told him that he would give him any security which he might call for by way of indemnity for signing the said notes, and the defendant also gave to Howard assurances of the same character and effect at the several times when Howard became surety for the defendant as aforesaid, but nothing was at any time said by either of the plaintiffs to the defendant,

or by him to them, about his giving a note for security or indemnity until the occasion when the note for eleven hundred dollars was made and executed, as hereinafter mentioned. On the 16th July, 1860, certain creditors of the defendant, caused the defendant's store of goods in Peru to be attached upon a writ in their favor against him, and closed. On the 18th July, 1860, Hapgood requested the defendant to give a note to secure the plaintiffs against their liability as sureties for him, and also to secure the amount of his private indebtedness to Hapgood. The defendant thereupon made and executed the said note for eleven hundred dollars,—it being the note now in suit,—with the knowledge and consent of both the plaintiffs, and delivered the same to Hapgood. Immediately upon the execution and delivery of this note Hapgood caused the present suit to be commenced upon it, and caused the defendant's store of goods to be attached thereon. Soon afterwards the West River Bank brought a suit against the defendant and caused the same store of goods to be attached thereon, subject to the previous attachments above mentioned. The defendant made, executed, and delivered the note for eleven hundred dollars, intending thereby to secure the plaintiffs to that amount for their claims against him severally, and for their liabilities for him as his sureties as aforesaid. There was nothing due from the defendant to the plaintiffs jointly at the time of the making of the note for eleven hundred dollars, nor was there, previous to or at that time, any transaction between him and them in which they had a joint interest, aside from this note. When this note was so executed the plaintiffs did not jointly, nor did either of them severally, assume the payment of any of the notes upon which they or either of them were liable for the defendant as surety ; nor did they jointly, or either of them severally, undertake to indemnify the defendant against any of the notes upon which they or either of them were liable for him as surety, or against any portion of such notes ; nor did either of the plaintiffs discharge any debt which was due to him from the defendant, or give up any securities then held therefor, but each continued to hold, and at the time of trial still held, the same securities for his private claims against the defendant which he held when the $1100 note was executed. There was no other

undertaking or promise on the part of either party, at the time of the execution of the note for eleven hundred dollars, than as above stated, unless it be implied by law from the facts above stated. The defendant had, before the making of the said note for eleven hundred dollars, pledged to Howard two horses to secure him for his debt against the the defendant, upon the sale of which Howard received $185. On the next day after he note for eleven hundred dollars was executed, the defendant assigned certain notes and accounts in his favor to Hapgood, for the benefit of Hapgood, Howard, and Aldrich, to secure them for their liabilities upon the notes before mentioned as sureties for him,—from which Hapgood had at the time of trial collected a sufficient sum to amount with interest while in his hands to $628,35,—one third part of which sum was on the 17th December, 1862, paid by Hapgood to the administrator of the estate of Aldrich. Hapgood had since the commencement of this suit, paid all the notes upon which he was liable as surety for the defendant as aforesaid, and Howard had since the commencement of this suit, paid the note for $400,00 to the Battenkill Bank, and the note of $500,00 to the West River Bank. Aldrich died in the fall of 1860, and Howard presented his claim for contribution, on account of the payments last mentioned, for allowance by the commissioners of claims against the estate of Aldrich, and the same was duly allowed by the commissioners to the extent of one half of the amounts so paid by Howard with interest thereon ; and, on the 17th December, 1862, the administrator of the estate of Aldrich paid to Howard sixty per cent. of the amount so allowed. The settlement of the estate of Aldrich was not closed at the time of trial. It was not questioned that the defendant was wholly destitute of property.

Upon these facts the court rendered judgment that the plaintiffs should recover of the defendant the full amount of the note for eleven hundred dollars, with the interest thereon, and should also recover of the West River Bank, as subsequent attaching creditor, nominal damages and all costs that accrued in the litigation of this suit after the entry of the subsequent attaching creditor to defend the suit. To this decision the West River Bank, as subsequent attaching creditor, excepted.

Hapgood et al. *v.* Polley et al.

*Butler & Wheeler*, for the West River Bank.

*A. L. Miner*, for the plaintiffs.

ALDIS, J.  The plaintiffs were liable as sureties for the defendant to a much larger amount than the $1100 for which they took his note ; but they were not jointly so liable for so large a sum.   But their liabilities with others, and the debts due to them individually, amounted, when added to their joint liabilities, to more than $2000.   Being thus liable for him as sureties, and he being desirous to secure them, and insolvent, and his personal property being under attachment, he executed this note for $1100 payable on demand.   They immediately commenced a suit on it and attached his personal property subject to the former attachment.   In this way he was enabled to secure them. Is the note void for want of consideration ?   We think not.

1. The note having been given with a view to cover those liabilities of the sureties, the law implies an agreement on the part of the sureties to apply the avails of the note to those debts, and an assumption by them of the payment of them to that extent.   If there had been an express promise, it is admitted it would have been valid.   The law implies one.

Judge Putnam in *Little* v. *Little*, 13 Pick. 426, cited by the counsel of the creditor, says, when referring to *Cushing* v. *Gore* 13 Mass. :—" It was understood the plaintiff (the surety) was to pay the notes he had endorsed.   There was no direct evidence, but the jury rightly inferred the fact.   The court said it might be inferred from the mere fact of a note having been given with a view to cover those endorsements."   Both the cases in Massachusetts hold that the contract may be implied—and when, before judgment is rendered on the new or collateral note, the surety pays the liability for the principal, he is allowed to recover.   Here the previous promise to give security would be evidence from which the implied agreement might be held to be proved.

2. We think the transaction may be regarded as a mode of making an assignment of personal property from the debtor to

the surety through the intervention of an attachment. He could not transfer any right in his property to them in any other way.

Such assignment of property from a debtor to his creditor or surety is special and has been held good in several cases decided since our general assignment law was passed.

Judgment affirmed.